IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | Case No. 1:17-cr-84(1) |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | **ORDER DENYING DEFENDANT'S** |
| KEILA SPURLING, | : | **MOTION FOR COMPASSIONATE** |
| | : | **RELEASE** |
| Defendant. | : | |
| | : | |

This matter is before the Court on Defendant Keila Spurling's third Motion for Compassionate Release. (Doc. 133.) The United States opposes the Motion. (Docs. 134, 136, 138.) For the reasons below, the Court will **DENY** the Motion.

I.      **BACKGROUND**

Spurling and three co-defendants were charged in an Indictment dated July 19, 2017 with conspiracy, use of a firearm during and in relation to a crime of violence, and two counts of armed bank robbery. (Doc. 6.) On October 10, 2017, Spurling entered into a Plea Agreement. (Doc. 45.) According to the statement of facts to which Spurling admitted, she and her three co-defendants robbed two banks within a two-week period in 2017.[1] On May 26, 2017, while her co-defendant brandished a firearm, Spurling vaulted the bank counter, gathered money, and fled the bank. (Doc. 45 at PageID 82.) On June 6, 2017, they robbed a second bank, but this time Spurling held bank employees at gun point while two of her co-defendants gathered the money. (*Id.*)

---

[1] Keila Spurling is transgender, but she continues to use female pronouns. (Doc. 133 at PageID 940.) The Court likewise will use female pronouns for her.

Spurling pleaded guilty to two counts charged: arrmed bank robbery and using, carrying, and brandishing a firearm during and in relation to a crime of violence.  (*Id.* at PageID 77; Doc. 49.)  Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), Spurling and the United States agreed to "a total term of imprisonment of one hundred forty-seven (147) months—63 months as to Count 1 [armed bank robbery] and 84 months on Count 4 [brandishing a firearm during a crime of violence], to run consecutive to Count 1—followed by a five (5) year term of supervised release."  (Doc. 45 at PageID 79.)  The Court imposed the agreed sentence on May 16, 2018.  (Doc. 79.)

On June 8, 2020, Spurling moved for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), commonly called "compassionate release."  (Doc. 95.)  Having determined that Spurling had not exhausted the required administrative remedies, the Court denied her first motion for compassionate release without prejudice.  (Doc. 102.)  On August 11, 2020, Spurling filed a Second Motion for Compassionate Release.  (Doc. 103.)  According to the medical records provided in support of her motion, Spurling, who was only 29 years old, had suffered two significant heart attacks while incarcerated.  She had a pacemaker and defibrillator inserted in April 2020.  (Doc. 106 at PageID 729.)  The Court denied the Second Motion for Compassionate Release on the merits finding that the 18 U.S.C. § 3553(a) sentencing factors still warranted the 147 months sentence.  (*Id.* at 731–732.)

Four years later, Spurling moved for a reduction of sentence under 18 U.S.C. § 3582(c)(2) because she qualified for a lower criminal history category and guideline range under retroactive amendments to the Sentencing Guidelines.  (Doc. 121.)  The Court reduced her sentence on Count 1 to 57 months, making her total sentence 141 months.  (Docs. 123, 124.)

2

Spurling has now moved for compassionate release a third time. (Doc. 133.) Prior to filing her pending motion with the Court, Spurling attempted to exhaust her administrative remedies by requesting compassionate release in writing from the warden of FMC Carswell in July 2025. (Doc. 133-1 at PageID 944.) The warden directed her to make her request to the prison's social work department and stated that the social worker might request additional information from her. (*Id.*) There is no evidence that Spurling followed up with the social worker. Instead, she filed the pending Motion. (Doc. 133.) She asks counsel to be appointed to assist her in this matter. The Government opposes any reduction in her sentence. (Docs. 134, 136, 138.)

Spurling is incarcerated at FMC Carswell, a federal medical center operated by the Bureau of Prisons, in Tarrant County, Texas. Her projected release date is June 13, 2028. *See* Federal Bureau of Prison, Find an Inmate, https://www.bop.gov/inmateloc/ (last visited on 4/28/2026).

## II.    LEGAL STANDARD

Spurling moves for compassionate release under 18 U.S.C. § 3582(c). The Court lacks authority to resentence a defendant, except as permitted by statute. *United States v. Houston*, 529 F.3d 743, 748–749 (6th Cir. 2008). Section 3582(c) provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original

3

term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

* * *

(2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c).

When the inmate has exhausted administrative remedies, the district court must (1) determine whether "extraordinary and compelling reasons" warrant a reduction, (2) ensure that the reduction is consistent with the applicable policy statements by the Sentencing Commission in U.S.S.G. § 1B1.13, and (3) weigh the relevant sentencing factors listed in 18 U.S.C. § 3553(a). *United States v. Jones*, 980 F.3d 1098, 1101, 1107–1108 (6th Cir. 2020).[2] "Congress did not define what constitutes an 'extraordinary and compelling reason,' except to state that '[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.'" *United States v. Hunter*, 12 F.4th 555, 561 (6th Cir. 2021) (quoting 28 U.S.C. § 994(t)).

---

[2]  The Sixth Circuit determined in *Jones* that the only policy statement potentially applicable to motions for compassionate release—U.S.S.G. § 1B1.13—was inapplicable to cases filed by federal inmates. 980 F.3d at 1109, 1111.  Therefore, the district court had full discretion to define "extraordinary and compelling reasons" without reference to the policy statement in § 1B1.13. *Id.* at 1111; *United States v. Elias*, 984 F.3d 516, 519–520 (6th Cir. 2021).  However, the Sentencing Commission amended U.S.S.G. § 1B1.13 effective November 1, 2023 to make clear that the policy statement applies to motions filed by inmates.  U.S.S.G. § 1B1.13(a).

The § 3553(a) factors referenced in the statute include (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence imposed to reflect the seriousness of the offense; (3) the need to protect the public from further crimes of the defendant; (4) the sentencing guideline range; and (5) the need to avoid unwarranted sentence disparities among defendants with similar records guilty of similar conduct.  18 U.S.C. § 3553(a).  These factors implicitly allow a district court to consider the amount of time served when determining whether a reduction in sentence is appropriate.  *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020).  Also, district courts can consider nonretroactive changes in law relevant to sentencing as part of their weighing of the § 3553(a) sentencing factors. *Hunter*, 12 F.4th at 568–569.  District courts are encouraged to be "explicit and particular with their factual reasoning" when they consider the § 3553(a) factors.  *Jones*, 980 F.3d at 1113.

**III.    ANALYSIS**

**A.    Request for Appointment of Counsel**

Generally, an indigent criminal defendant's right to counsel extends only to the first appeal as of right.  *See Coleman v. Thompson,* 501 U.S. 722, 755–756 (1991).  Defendants have no constitutional right to counsel in 18 U.S.C. § 3582 proceedings.  *United States v. Manso-Zamora*, 991 F.3d 694, 696 (6th Cir. 2021).  The Court will not appoint counsel for Spurling in this matter.

**B.    Administrative Exhaustion**

Spurling waited to file the pending Motion here until more than thirty days after the warden had received her written request for compassionate release.  (Doc. 133-1 at PageID 944.) This satisfies her duty to exhaust administrative remedies before filing suit under in 18 U.S.C. § 3582(c)(1)(A).

### C.      Extraordinary and Compelling Reasons

The Court turns then to whether Spurling has proven an extraordinary and compelling reason for early release and whether 18 U.S.C. § 3553(a) sentencing factors support release.  18 U.S.C. § 3582(c)(1)(A)(i).  The Court first finds that she failed to establish extraordinary and compelling circumstances that would justify her release.

### 1.      Health Conditions

Spurling asserts that her health conditions—a heart condition warranting a placement of a pacemaker/defibrillator and asthma—are exacerbated by the presence of toxic mold and asbestos at FMC Carsell.  (Doc. 133 at PageID 940–941.)  She does not provide, however, any evidence proving the location or extent of the alleged toxic mold or asbestos at the prison.  For its part, the Government asserts that asbestos was removed from the facility before 1995 and that no mold has been found there, but it too fails to provide admissible evidence on this matter.  (Doc. 134 at PageID 974–975; Doc. 136 at PageID 985.)  The Court found other cases in which inmates at FMC Carswell have made similar claims, but the Court did not find any cases in which the presence of asbestos or mold at the prison was proven or disproven with evidence.  *See*, *e.g.*, *United States v. Hardin*, No. 1:12-CR-80 (1), 2025 WL 2306848, at *6 (E.D. Tex. Aug. 11, 2025) (denying compassionate release on other grounds); *United States v. Herrera*, No. 3:18-CR-006-D(09), 2025 WL 2163773, at *2 (N.D. Tex. July 29, 2025) (denying compassionate release on other grounds); *United States v. Hamilton*, No. CR H-17-418, 2024 WL 4052336, at *6–7 (S.D. Tex. Aug. 19, 2024) (denying compassionate release on other grounds).  In *United States v. Murrow*,  the district court denied compassionate release to an inmate at FMC Carswell but reduced her ninety-month sentence by six months, based in part on her allegations of "substandard conditions including mold, fallen ceiling areas, lack of hot water due to broken

pipes, and a general lack of hygiene and access to care, including appointments made but cancelled." No. CR 21-11-H-BMM, 2025 WL 2163227, at *4–5 (D. Mont. July 30, 2025). This Court does not find *Murrow* to be persuasive under the facts here.

Even if Spurling had evidence to prove that she has been exposed to toxic mold or asbestos in the prison, she has not proven that she is suffering from a medical condition which would constitute an extraordinary and compelling ground for her release. A defendant's medical condition generally constitutes an extraordinary and compelling reason for compassionate release in only very limited circumstances:

> **(b) Extraordinary and Compelling Reasons.**--Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
>
> **(1) Medical Circumstances of the Defendant.**--
>
> (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (B) The defendant is--
>
> (i) suffering from a serious physical or medical condition,
>
> (ii) suffering from a serious functional or cognitive impairment, or
>
> (iii) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.
>
> (D) The defendant presents the following circumstances--
>
> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing

public health emergency declared by the appropriate federal, state, or local authority;

(ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

(iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1).  Subparts (B)(i) and (C) are relevant here.

Spurling is suffering from serious medical conditions, including asthma and ongoing heart-related issues.  But she has not established that she cannot provide normal self-care or that she is not receiving the long-term or specialized care that she requires.  *See* U.S.S.G. § 1B1.13(b)(1)(B)(i) & (C).  The Court has reviewed her prison medical records from the 2024–2026.  (Docs. 138-4, 138-5, 138-6.)  They show that she is receiving regular and on-going care for asthma, cardiac issues, and transgender transition issues.  They also demonstrate that she received treatment for minor illnesses.  For example, in 2025 Spurling received antibiotic treatment for strep throat in April and was seen by a medical doctor for pharyngitis in September.  (Doc. 138-5 at PageID 2135, 2183.)  The records simply do not support her assertion that she "cycled through flu-like symptoms every 6 weeks."  (Doc. 133 at PageID 941.)  The Court will not grant compassionate release to Spurling based on her health condition.

### 2. Sexual Abuse

Spurling also asserts that she is entitled to compassionate release because she has been sexually abused by a female correctional officer named Harris.  (*Id.*)  The Sentencing Guidelines authorize compassionate release for an inmate who suffers sexual abuse by a corrections officer involving a sexual act as defined in 18 U.S.C. § 2246(2).  U.S.S.G. § 1B1.13(b)(4).  Such abuse, however, ordinarily "must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding unless such

8

proceedings are unduly delayed or the defendant is in imminent danger." *Id.*  Spurling has not provided that level of proof that the abuse occurred, nor has she established that she is currently in imminent danger.  On the other hand, the Government relies on an investigative finding in September 2025 by the Office of Internal Affairs that as to the allegations against Officer Harris, "[n]o misconduct was sustained." (Doc. 136-1 at PageID 991.)  Spurling's allegations of sexual abuse do not, without more, establish a compelling and extraordinary basis for compassionate release.

### 3. Transgender Issues

Next, Spurling requests compassionate release because she fears that she will not continue to receive the transgender transitioning medical care she requires.  (Doc. 133 at PageID 942.)  On January 20, 2025, President Donald Trump issued Executive Order 14168, which contained the following relevant provision:

> The Attorney General shall ensure that the Bureau of Prisons revises its policies concerning medical care to be consistent with this order, and shall ensure that no Federal funds are expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex.

*See* The White House, *Presidential Actions*, *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, https://www.whitehouse.gov/presidential-actions/2025/01/defending-women-from-gender-ideology-extremism-and-restoring-biological-truth-to-the-federal-government/ (last viewed 4/28/2025).  But Spurling concedes that the Executive Order is being challenged in litigation. *See*, *e.g.*, *Kingdom v. Trump*, No. 1:25-cv-691-RCL, 2026 WL 452173 (Dist. D.C. Feb. 12, 2026) (extending preliminary injunction).  The Court will not grant Spurling compassionate release based on an Executive Order which is not currently being enforced against her.

Spurling also alleges that she is forced to shower with "biological male inmates" who "alleg[e] they are transwomen" but are "actually scamming the FBOP transgender policy, to have access to biological women to commit voyeurism, stalking, and sexual assaults." (Doc. 133 at PageID 940.)  However, she provides no details or evidence to support the barebones allegation.  She does not allege that she has been threatened or harmed by any transfemale inmates.  This allegation is not sufficient standing alone or in conjunction with the others to provide extraordinary and compelling circumstances for early release.

 D.    **Sentencing Factors**

Even if Spurling had proven that extraordinary and compelling circumstances existed, the Court would not reduce her sentence because a reduction is not warranted under the 18 U.S.C. § 3553(a) sentencing factors.  To begin, the nature and circumstance of her offense weigh against a reduction.  Spurling admits that she and her co-defendants committed armed bank robberies on two separate occasions, both of which involved brandishing a firearm.  According to the manager at one of the banks, "Spurling held the firearm less than one foot away from his head" and "screamed and shouted profanities at bank staff." (PSR at ¶ 28.)  The manager "believed his life was in serious danger." (*Id.*)  Indeed, one of his employees immediately quit her job following the armed robbery. (*Id.*)  A bank teller indicated that she was so "terrified" and in fear for her life that she had to be prescribed medication to sleep. (*Id.* ¶ 29.)  She no longer felt safe in a bank environment and ultimately resigned her position several months later. (*Id.*)  A sentence of 141 months imprisonment appropriately matches the seriousness of the offenses.

In addition, this was not Spurling's first offense involving a firearm.  During a 2013 search of the vehicle Spurling was driving, "police located a loaded firearm that was concealed under the driver's seat." (*Id.* ¶ 63.)  At the time of the instant offense, Spurling had yet to

successfully complete the one year of community control imposed for the 2013 firearm offense. (*Id.*)  Spurling's weapon of choice appears to be a firearm, and there is no evidence that her ongoing physical ailments would prevent her future firearm use.  Spurling engaged in very serious criminal conduct, endangering many lives in the process.

Finally, the Court must be mindful to avoid sentencing disparities among defendants convicted of similar conduct.  In this case, Spurling and Miguel Chiles committed the most egregious acts.  The Court sentenced Miguel Chiles to a total term of imprisonment of 182 months and his anticipated release date is May 30, 2030.  *See* Federal Bureau of Prison, Find an Inmate, https://www.bop.gov/inmateloc/ (last visited on 4/28/2026).  Miguel Chiles, like Spurling, participated in both robberies and brandished a gun during one robbery.  Spurling received a lower sentence than Miguel Chiles.

Conversely, the Court sentenced Quincy Chiles to a term of imprisonment of 121 months and he has been transferred to a residential reentry management facility.  He is expected to be released on May 13, 2026.  Federal Bureau of Prison, Find an Inmate, https://www.bop.gov/inmateloc/ (last visited on 4/28/2026).  Quincy Chiles participated in only one robbery, but Spurling participated in both robberies.  (Doc. 45 at PageID 82; PSR at ¶¶ 20–22.)  She brandished a gun during a robbery, but Quincy Chiles did not.  (Doc. 45 at PageID 82; PSR at ¶¶ 20–22.)  Spurling's conduct was objectively more serious than Quincy Chiles's conduct, and Spurling should be incarcerated for longer.[3]  In sum, the Court also will deny Spurling's request for compassionate release because the § 3553(a) sentencing factors weigh against any further reduction of her sentence.

---

[3]  The Court sentenced Sierra Leary—who did not enter the banks but drove the "getaway" car—to 84 months imprisonment, and she was released in August 2024.  Federal Bureau of Prison, Find an Inmate, https://www.bop.gov/inmateloc/ (last visited on 4/28/2026).  Her offense is sufficiently less serious that she is not a good comparator to Spurling.

12

## IV.    CONCLUSION

After considering the factors set forth in 18 U.S.C. § 3553(a), the Court concludes that a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is not warranted in this case. Accordingly, Spurling's third Motion for Compassionate Release (Doc. 133) is **DENIED**.

**IT IS SO ORDERED.**

S/Susan J. Dlott_____
Judge Susan J. Dlott
United States District Court

12